UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
PHIO PHARMACEUTICALS CORP.          )
f/k/a RXI PHARMACEUTICALS,          )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )   Case No. 18-cv-12181-DJC
                                    )
ANASTASIA KHVOROVA,                 )
                                    )
        Defendant.                  )
                                    )
                                    )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                June 6, 2019

### I. Introduction

Plaintiff Phio Pharmaceuticals Corp. f/k/a RXi Pharmaceuticals Corporation ("RXi") has filed this lawsuit against Defendant Anastasia Khvorova ("Khvorova") alleging misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836-39 (Count I), Massachusetts Trade Secrets Act (Count II) and Mass. Gen. L. c. 93, §§ 42-42A (Count III); breach of fiduciary duties (Count IV); breach of contract (Count V); and unfair competition in violation of Mass. Gen. L. c. 93A, § 11 (Count VI). D. 18. Khvorova has moved to dismiss under Fed. R. Civ. P. 12(b)(7). D. 21. For the reasons stated below, the Court DENIES the motion.

### II. Standard of Review

Pursuant to Rule 12(b)(7), a party may move for dismissal of an action for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). The Court conducts a two-part inquiry to determine whether a party must be joined under Rule 19. See Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15

(1st Cir. 2008). First, the Court must decide whether a party is necessary under Rule 19(a). United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2001). If a party is a necessary one, the Court must then ask whether joinder is feasible. Fed. R. Civ. P. 19(a). If joinder is not feasible, then the second determination that must be made under Rule 19(b) is whether the party is indispensable such that, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "[T]he moving party carries the burden of showing why an absent party should be joined." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000).

"As with Rule 12(b)(6) motions, a court must accept the allegations contained in the plaintiff's complaint as true for the purpose of the Rule 12(b)(7) inquiry." McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 151 (D.D.C. 2014); Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477, 479 n.2 (7th Cir. 2001) (stating that "[f]or purposes of a motion to dismiss for failure to join a party under Rule 19, we accept the allegations in the complaint as true"). However, "a court is 'not limited to the pleadings' and may consider 'other relevant extra-pleading evidence.'" Phoenix Ins. Co. v. Delangis, CIV.A. No. 14-10689-GAO, 2015 WL 1137819, at *2 (D. Mass. Mar. 13, 2015) (quoting Axis Ins. Co. v. Hall, 287 F.R.D. 110, 113 (D. Me. 2012)).

### III. Factual Background

Unless otherwise noted, the following facts are based upon allegations in RXi's amended complaint, D. 18, and are accepted as true for consideration of the motion to dismiss. RXi is a Massachusetts-based pharmaceutical company that has contributed to the development of ribonucleic acid interference ("RNAi"), a compound that can destroy selected sequences of ribonucleic acids ("RNA"). D. 18 ¶¶ 2-3, 15. RNAi has vast potential to treat and cure numerous diseases and conditions, including Alzheimer's Disease, inflammatory diseases, macular

2

degeneration and heart disease. Id. ¶ 2. RXi has patented and performed six clinical studies with a self-delivering RNAi called sd-rxRNA® compound, which is notable for (among other things) its exceptional half-life. Id. ¶¶ 3, 6. Features of sd-rxRNA® are described in U.S. Patent No. 8,796,443 ("'443 Patent"), id. ¶ 6, which was assigned to RXi and lists Khvorova as lead inventor, see D. 18-1 at 2.

### A. Khvorova's Employment at RXi

In connection with its RNAi work, RXi hired Khvorova as its Chief Scientific Officer in 2008. D. 18 ¶ 7. She was promoted to Senior Vice President and Chief Scientific Officer on September 24, 2011. Id. As part of the conditions of her employment, Khvorova agreed not to disclose or use in an unauthorized manner any RXi confidential information acquired over the course of her employment. Id. ¶¶ 24-26, 28-32. Khvorova's employment agreements from 2008 and 2011 indicated that the restrictions on use of confidential information continued to apply after her employment terminated. Id. ¶¶ 26, 31. Concurrently with the execution of the 2011 Employment Agreement, Khvorova assigned to RXi certain intellectual property she developed while working at a different company and agreed that the technology disclosed in those assignments was subject to the same confidentiality provisions as in her RXi employment agreements. Id. ¶¶ 33-34. Khvorova received cash, stock, stock options and future cash payments valued in the millions of dollars (at the time) in exchange for these assignments to RXi. Id. ¶ 33.

On November 8, 2011, Khvorova allegedly sent confidential information detailing RXi's methodology for the developmental testing of RNAi to her personal email account. Id. ¶ 36. On or between February 24 and 26, 2012, Khvorova downloaded "massive" amounts of RXi data and experimental findings, which triggered an internal investigation into Khvorova's download activity. Id. ¶ 37. Khvorova and RXi entered into a separation agreement shortly thereafter. Id. ¶ 38. Pursuant to the terms of the separation agreement, Khvorova assigned certain intellectual

3

property rights to RXi and acknowledged her continued obligation not to disclose RXi confidential information. Id. ¶¶ 38-39.

   B.   **Alleged Post-Termination Disclosure of Confidential Information**

On or before April 22, 2013, Khvorova began working for the University of Massachusetts Medical School ("UMass"), one of RXi's competitors in the field of pharmaceutical RNAi research and development. Id. ¶ 47. During her employment with UMass, RXi sent Khvorova reminders regarding her confidentiality obligations with respect to RXi's intellectual property. See id. ¶ 53. In December 2015, Dr. Khvorova's laboratory released an article titled "Hydrophobically Modified siRNAs Silence Huntington mRNA in Primary Neurons and Mouse Brain," which described the utility of an RNAi molecule that RXi describes as "strikingly similar" to its sd-rxRNA®. Id. ¶ 51. On November 3, 2016, Khvorova was named as an inventor on U.S. Patent application 15/089423 (the "'423 Application"). Id. ¶¶ 12, 52; D. 22-1 at 4.[1] In April 2016, Khvorova and her co-inventors assigned the '423 Application to UMass. D. 22-1 at 266, 268-69. The '423 Application allegedly describes a class of RNAi molecules possessing the same non-public experimental features of sd-rxRNA®. D. 18 ¶ 52. RXi and Khvorova were investigating these molecules during her tenure at RXi. Id.

On July 5, 2017, RXi submitted an assignment document indicating that Khvorova assigned the '423 Application to RXi. D. 22-1 at 270-73. The document was signed by Geert Cauwenbergh purportedly as power of attorney on behalf of Khvorova. Id. at 273. On August 23, 2017, however, UMass filed a declaration with the United States Patent and Trademark Office

---

[1] A party seeking dismissal under Rule 12(b)(7) may present, and the court may consider, evidence outside the pleadings that bears on whether an absent party should be joined. Raytheon, 123 F. Supp. 2d at 32. Here, the Court considers the '423 Application and other relevant evidence filed in support of Khvorova's motion. See D. 22-1.

("USPTO") clarifying that UMass (as opposed to RXi) is the "true owner" of the '423 Application. D. 22-1 at 277-78.

## IV. Procedural History

RXi instituted this action on October 19, 2018. D. 1. Khvorova moved to dismiss the original complaint on February 8, 2019. D. 16. On February 22, 2019, prior to the Court's adjudication of Khvorova's motion, RXi filed an amended complaint. D. 18. Khvorova then moved to dismiss the amended complaint. D. 21. The Court heard the parties on the pending motion on May 7, 2019 and took the matter under advisement. D. 34.

## V. Discussion

RXi alleges here that Khvorova disclosed confidential information and trade secrets concerning the development of sd-rxRNA®, including to RXi's direct competitor and Khvorvoa's current employer, UMass, in breach of contract and in violation of state and federal misappropriation laws, common law fiduciary obligations and Chapter 93A. D. 18 ¶¶ 55-113. RXi seeks a permanent injunction against further use or disclosure of its confidential information, an order requiring that Khvorova return documents and other tangible RXi trade secrets, damages and any such other relief as the Court may deem just and proper. Id. Requested Relief ¶¶ 1-8. Pursuant to the motion to dismiss, D. 21, Khvorova contends that UMass is an indispensable party to this action and urges the Court to dismiss the amended complaint to the extent the Court concludes that joinder is not feasible. D. 22 at 3. The Court must first determine whether UMass is a necessary party under Rule 19(a) and, if so, then whether it is an indispensable party under Rule 19(b). See San Juan Bay Marina, 239 F.3d at 405.

### A. UMass is Not a Necessary Party

Khvorova, in essence, contends that UMass is a necessary party because the relief RXi seeks directly implicates UMass's rights in the '423 Application and, in the case of a permanent injunction, UMass could be barred from prosecuting the '423 Application. D. 22 at 11-12. A party is a necessary party under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014). "Relief is complete when it meaningfully resolves the contested matter as between the affected parties." Id.

Here, RXi seeks an order requiring that Khvorova return RXi's documents and other tangible "RXi Trade Secret Information" in her possession, as well as a permanent injunction against any further use or disclosure of RXi confidential, proprietary or "Trade Secret Information," damages, attorneys' fees and any other relief that the Court deems just and proper. D. 18 ¶¶ 1-8. On this record, the Court does not concluded that the aforementioned relief would interfere with UMass's interest in the '423 Application.[2] The Court is not persuaded by Khvorova's invitation to "read[] between the lines" of the amended complaint, D. 18, for an ownership interest that would be impaired by the relief sought here, see D. 32 at 3, including an order requiring Khvorova to return and discontinue the misappropriation of documents and other tangible objects taken from RXi. RXi is not seeking the Court's ruling on any action before the USPTO nor does it ask the Court to assess UMass's ownership interest in the '423 Application.

---

[2] Throughout her motion papers, Khvorova appears to suggest that the Court may draw inferences from allegations in the original complaint that were either modified or not included in the amended complaint. See D. 22 at 7-10. As RXi correctly notes, however, the amended complaint "supersedes the antecedent complaint" such that the latter must be treated as a "dead letter and 'no longer performs any function in the case.'" ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (quoting Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003)).

Rather, it seeks injunctive relief preventing Khvorova from using and disclosing its confidential information in violation of state and federal law. In the analogous context of whether a misappropriation claim raised substantial questions of patent law, other courts concluded allegations that "defendants had misappropriated . . . trade secrets, and had caused patent applications to be filed with the PTO, which were related to the plaintiff's trade secrets" did not require the resolution of inventorship questions arising under federal patent law. Palantir Techs. Inc. v. Abramowitz, No. 16-CV-5857-PJH, 2017 WL 926467, at *5 (N.D. Cal. Mar. 9, 2017) (quoting Altavion, Inc., v. Konica-Minolta Sys. Lab., Inc., 2008 WL 2020593, at *2-3 (N.D. Cal. May 8, 2008) (rejecting theory that plaintiff's request for injunctive relief in misappropriation claim necessarily depended on a resolution of patent inventorship within the technical sense used in patent law)). Here, RXi's misappropriation claims can be resolved without analysis of the patent application rights related to the '423 Application. Even if Khvorova were required to return or discontinue her use of RXi documents relevant to the art disclosed in the '423 Application, that, alone, would not change the '423 Application's assignment history (or, by extension, UMass's ownership interest). The mere possibility that RXi's requested relief could impact the prosecution of the '423 Application at some later date, see D. 32 at 5-6, is not sufficient to require joinder of UMass as a necessary party to this action. See Raytheon, 123 F. Supp. 2d at 32 (explaining that a "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action") (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (2d ed. 1990 & Supp. 2000)); see also Palantir, 2017 WL 926467, at *6 (stating that even where "allegedly fraudulent conduct before the USPTO will no

doubt be a large part of the proceedings in this action," federal patent law is not implicated because "the USPTO does not form the exclusive theory upon which . . . claims are based").[3]

Khvorova also argues that failure to join UMass to this action could expose Khvorova to multiple, inconsistent rulings because RXi and UMass both "claim the right to obtain an assignment of [Khvorova's] rights in the '423 Application." D. 22 at 12-13. As an initial matter, the Court does not consider reassignment of the '423 Application as part of the relief sought in the amended complaint. In addition, the fact that an existing party may pursue or be subject to further litigation against other absent parties has no effect on the analysis under Rule 19(a)(1)(A). See, e.g., Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1, 12 (1st Cir. 2013) (noting that "[t]he mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party") (citation and internal quotation marks omitted); MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006) (affirming the refusal to join Visa in a dispute between MasterCard and an international sports association even though both Visa and MasterCard were disputing the same exclusive sponsorship rights and "there [was] no question that further litigation between Visa and [the sports association], and perhaps MasterCard and Visa, is inevitable if MasterCard prevails in this lawsuit").

For support, Khvorova cites to Ali v. Carnegie Institution of Washington, 306 F.R.D. 20, 26 (D.D.C. 2014), aff'd 684 Fed. Appx. 985 (Fed. Cir. 2017), but the posture of that case is different from the facts alleged in the amended complaint. There, the court found that UMass was

---

[3] Khvorova argues further that RXi's "catchall" request for "any such other and further relief as the Court may deem just and proper" could be used to "revive" requests for relief that were not included in the amended complaint and which challenge UMass's ownership of the '423 Application. D. 22 at 12. The Court anticipates, however, that the limits of any relief granted would be consistent with this ruling on whether UMass is an indispensable party.

a necessary party because the plaintiff directly challenged the inventorship of patents owned by UMass and sought damages from UMass. See Ali, 306 F.R.D. at 26. The Federal Circuit recognized that UMass's interests as co-owner of the patents at issue would be "highly prejudiced in its absence" considering the additional protections afforded to patent owners. Id. (collecting cases that "strongly support the conclusion that patent owners are required to be joined if feasible under Rule 19(a)) (quoting Univ. of Utah v. Max–Planck–Gesellschaft Zur Forderung Der Wissenschaften E.V., 734 F.3d 1315, 1326 (Fed. Cir. 2013)). The court also acknowledged that it could not accord complete relief among the existing parties given that the defendant was not under any obligation to cover damages UMass purportedly owed the plaintiff. Id.

RXi's prayer for relief, by contrast, does not address patent ownership interests and the action here challenges an inventor's misconduct rather than the application itself. In addition, if Khvorova is found liable, the issues between Khvorova and RXi will be resolved; no other party is needed to provide the injunctive, declaratory and monetary relief RXi seeks from Khvorova. That is, the instant dispute need not resolve issues between RXi and UMass for the amended complaint to survive a motion to dismiss under Rule 12(b)(7). See Charest v. Fed. Nat'l Mortg. Ass'n, 9 F. Supp. 3d 114, 131 (D. Mass. 2014) (explaining "that an existing party's [unresolved] dispute with the absent party . . . does not make [the absent party] a required party"). Accordingly, the Court concludes that UMass is not a necessary party under Rule 19(a)(1)(A). The Court does not consider whether UMass is a necessary party pursuant to Rule 19(a)(1)(B) given that UMass has not claimed an interest relating to the subject of this action. Fed. R. Civ. P. 19(a)(1)(B).

### B. UMass is Not Indispensable Under Rule 19(b)

Even assuming *arguendo* that UMass is a necessary party (as this Court has concluded it is not) and joinder is not feasible due to UMass's immunity from suit, see Langadinos v. Bd. of

9

Trs. of Univ. of Mass., CIV.A. No. 12-11159-GAO, 2013 WL 5507042, at *18 (D. Mass. Sept. 30, 2013) (collecting cases in which courts in the First Circuit recognized UMass's Eleventh Amendment immunity from suits seeking injunctive relief and money damages in federal court), the Court declines to dismiss the amended complaint under Rule 19(b). The Court considers the following factors in assessing indispensability:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These factors favor proceeding without UMass. First, the prejudice to UMass from proceeding in its absence would be minimal given that RXi's requested relief focuses on restricting further improper use of its intellectual property by Khvorova. The Court cannot conclude, without more, that an adverse ruling as to Khvorova would impair UMass's rights to the '423 Application. Second, any prejudice derived from UMass's absence could be minimized by a limiting instruction from the Court and/or the limits of the relief permitted at the time a decision on the merits is rendered. Third, for the reasons previously discussed, there is no indication that a judgment between the existing parties would be inadequate. Finally, given UMass's sovereign immunity, it is likely that RXi would not have an adequate remedy against Khvorova if UMass was considered an indispensable party to the claims that it asserts here (or the subset of state claims it might assert in state court where a similar rule of joinder, Mass. R. Civ. P. 19, applies). Specifically, as "a component of the Commonwealth," UMass cannot be sued in state court under Massachusetts law without the legislature's express consent. Cameron Painting Inc. v. Univ. of Mass., 83 Mass. App. Ct. 345, 347 (2013); Commonwealth v. Pennsylvania Higher Educ. Assistance Agency, No. 1784CV02682-BLS2, 2018 WL 1137520, at *3 (Mass. Super. Mar. 1,

2018) (noting entity "'funded in part from the Commonwealth's treasury'… is itself protected by sovereign immunity and thus 'is not amenable to suit without the Commonwealth's express consent'") (citation omitted). UMass also cannot be sued in state court under federal law because as "an arm of the state," the Commonwealth's sovereign immunity applies. See United States ex Willette v. Univ. of Mass., 812 F.3d 35, 40 (1st Cir. 2016) (finding the University of Massachusetts and the University of Massachusetts Medical School are "arm[s] of the state"); Pennsylvania Higher Educ., 2018 WL 1137520, at *4 ("Massachusetts state entities are immune from claims brought under federal law in Massachusetts courts to the same extent that the Eleventh Amendment would bar such claims against them in Federal court"). UMass likewise cannot be sued in federal court under federal patent law unless sovereign immunity has been waived. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 624 (2002) (concluding "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity"); Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co., 916 F.3d 1363, 1365 (Fed. Cir. 2019) (explaining a state waives immunity when "it consents to federal court jurisdiction by voluntarily appearing in federal court") (citations omitted); Baum Research & Dev. Co. v. Univ. of Mass., 503 F.3d 1367, 1372 (Fed. Cir. 2007) (finding UMass waived its sovereign immunity by agreeing to submit to federal jurisdiction in a licensing agreement); cf. Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 643 (1999) (noting that sovereign immunity may only be abrogated "where the State provides no remedy, or only inadequate remedies, to injured patent owners"). RXi, therefore, would not have an adequate remedy at law against Khvorova for unilaterally misappropriating its confidential information if the Court concluded that UMass is an indispensable party.

As Rule 19(b) states, the Court's joinder decision is ultimately one based in "equity and good conscience." Fed. R. Civ. P. 19(b). Neither requires the Court to dismiss this action in light of UMass's absence.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Khvorova's motion to dismiss, D. 21.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge